### PETTIBONE, MULLIKEN & CO. v. VERONA TOOL WORKS.

(Circuit Court, W. D. Pennsylvania.   June 12, 1905.)

#### No. 16.

PATENTS—VALIDITY AND INFRINGEMENT—RAIL BENDER.

The Storm patent, No. 344,793, for a rail bender, used by track hands for bending railroad rails, adds nothing to a device previously in use, except its equipment with rollers to grasp the rail, and by means of which the machine may be moved along to successive positions without releasing the pressure by which it holds the rail, and is entitled to only a narrow construction, restricting it to the particular mechanism shown. Claim 1 is void, as too broad, in view of the prior art. Claim 6 *held* not infringed.

In Equity.

Dyrenforth, Dyrenforth & Lee, for complainant.
Bakewell & Byrnes, for respondent.

BUFFINGTON, District Judge.   This is a bill in equity brought against the Verona Tool Works by Pettibone, Mulliken & Co., assignee of patent No. 344,793, granted June 29, 1886, to one Storm, for a rail bender. Infringement of the first and sixth claims is alleged. The defenses are noninfringement and invalidity of the patent. An examination of the prior art satisfies us that the patentable novelty disclosed by the patent was such that its claims were necessarily restricted to a comparatively narrow compass. The device is one used by track hands for bending railroad rails. Such work was successfully done before this patent by machines of other types, which still continue in use by large and progressive railroad systems. The most common form of bender now and prior to the patent in suit was called the "Jim Crow." This consisted of a heavy, bowed frame, first bent upwards at the outer ends, and then turned downward into hooks. These hooks grasped the outer side of the rail, and afforded resistance points to a screw placed

midway between them, but on the other side of the rail, and reaching back to and sleeved in the bight of the bow. Pressure on the screw was effected by turning a nut shouldered against the bow. As the two hooks and the pressure point of the screw were all on one side of the bender, its construction was such that the machine could be operated by dropping it in place upon a rail lying on the ground. When thus applied, pressure was applied by turning the screw. When the pressure was released, the machine was moved along the rail, and pressure again applied at successive points until the rail was brought to the desired curvature. This was what was known as the "step by step process." The device of the patent in suit consisted, in substance, in equipping the Jim Crow bender with rollers. This was done by seating in the grasping hooks at each end of the bow of a vertical nonactuated roller, adapted to engage the head of the rail, and a third roller at the end of the screw, adapted to engage the other side of the rail head. This latter roller was provided with a squared spindle head, adapted to be revolved by a wrench. When this roller was forced against the rail head by the screw pressure from the nut seated against the bow, and the rail properly bent at that point, the machine could be moved along the rail by turning the spindle-headed roller, and the curving pressure applied at successive points, without releasing the initial pressure. This method imparted mobility to the machine, and permitted such mobility while the machine maintained curving pressure. It will thus be seen the device substituted mechanical or roller-moving mechanism for the step by step mobility theretofore in use. The mechanical result of this change was to permit mobility under bending pressure. In the light of the views expressed by the Circuit Court of Appeals of this Circuit in the case of Carnegie Steel Company v. Brislin, 124 Fed. 215, 59 C. C. A. 651, on the subject of imparting mobility to a machine, we are quite clear that no patentable novelty is involved in Storm's device. In that case the imparting to a stationary machine, adapted to perform one part of a process only, of lateral mobility, which enabled it to work at other lateral points, and thereby complete a process which it had never entirely completed before, was held not to involve patentable novelty. The court there say:

"We will not pause here to consider whether the thought or idea of laterally moving this device for the purpose stated was one worthy of being called a patentable invention, apart from the specific mechanical means devised for such lateral movement. We will only remark, in passing, that the suggestion of the moving of such a table on a carriage or truck laterally, so as to bring the same successively in front of stands of rolls placed side by side, does not seem to us to so involve patentable invention as to be entitled to the monopoly accorded to such invention by the present law."

In the present case the entire process of rail bending in the method of Storm's device had been employed before, and he simply equipped with rollers a machine which did such work. Moreover, the prior art was such that the nature of the advance was necessarily restricted in sphere. The Jim Crow device showed three resistance points of pressure, all located on the lower side of the device, and adapted to exert binding pressure from above. This

made that device applicable to a rail lying on the ground. The Vojacek device showed a movable bender provided with rollers and three resistance points, but so constructed that it could not be placed on a rail, but it necessitated threading. The device of the English patent of Hain, while employed in a stationary machine, showed the use of three pressure points on the upper side of a plane adapted to have a rail placed on it, instead of threaded into it, and equipped with rollers at the three points to move a rail through it. Under these facts, we are justified in confining these claims to the limits of the particular specific device which the patentee contributed to the art, or to the mechanical equivalents of the means he employed. In the light of these facts, we are of opinion the patentee was not entitled to the broad monopoly covered by claim 1, and that the same is void. As to claim 6, we are of opinion the respondent's device does not infringe. It has not the elements of the screw, D, and nut, E, of Storm's device for imparting pressure. In it pressure is not imparted by means of a screw, but through a shaft with an eccentric seated in the bend of the bow. In substance, this method of eccentric pressure is found in Emerson's patent of 1869—a device which has been employed in an extensively used bender of that name. It is true that upon the respondent's pressure shaft there is a sleeve, thread, and nut mechanism; but these are not used for imparting pressure, but to so adjust the length of the shaft as to secure through the eccentric different degrees of curvature. After due consideration, we are clear that infringement of this claim is not shown.

A decree may be drawn dismissing the bill.